# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 15-789V
(not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * *
LINDSEY MARTIN and RAYNARD          *      Chief Special Master Corcoran
MARTIN, as representatives of the estate of *
I.R.M., deceased,                   *
                                    *      Filed:  December 8, 2020
              Petitioners,          *
                                    *
       v.                           *      Attorney's Fees and Costs;
                                    *      Final Fees Award;
                                    *      Reasonable Basis; Expert
SECRETARY OF HEALTH AND             *      Rates; Reductions
HUMAN SERVICES,                     *
                                    *
              Respondent.           *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *
```

*Richard Gage*, Richard Gage, P.C., Cheyenne, WY, for Petitioner.

*Julia M. Collison*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### DECISION AWARDING ATTORNEY'S FEES AND COSTS[1]

On July 27, 2015, Lindsay and Raynard Martin filed a Petition under the National Vaccine Injury Compensation Program (the "Vaccine Program"[2]), on behalf of their deceased son, I.R.M., alleging that the Flumist version of the influenza ("flu") vaccine he received on September 24, 2014, caused his death two days later. Pet. at 1-2 (ECF No. 1). A hearing in this matter was held on May 23–24, 2019, and I subsequently issued a decision denying entitlement. ECF No. 85.

---

[1] Although the Decision has not formally been designated for publication, it will nevertheless be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012). **This means the Decision will be available to anyone with access to the internet**. As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published Decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the entire Decision will be available to the public in its current form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755 (codified as amended at 42 U.S.C. §§ 300aa-10–34 (2012)) (hereinafter "Vaccine Act" or "the Act"). All subsequent references to sections of the Vaccine Act shall be to the pertinent subparagraph of 42 U.S.C. § 300aa.

Petitioners filed a motion for review that was denied (ECF No. 97), and they did not pursue further appeal.

Petitioners have now filed a motion for a final award of attorney's fees and costs. Motion, filed Nov. 13, 2020 (ECF No. 101) ("Fees App."). Petitioners request $209,931.28—$109,066.71 in attorney's fees and $100,864.57 in costs—for the work of attorneys Mr. Richard Gage, Ms. Kristen Blume, and various paralegals. Fees App. at 4. Petitioners also seek fees for Ms. Valerie Borek, Esq., the attorney who initially represented them in this matter prior to Mr. Gage's appearance. *Id.* at 101-114. The costs requested include fees for three experts, record retrieval, shipping, and travel expenses for counsel and experts associated with the case's trial. *Id.* at 4. Respondent reacted to the fees request on December 4, 2020. *See* Response (ECF No. 102). Respondent is satisfied that the statutory requirements for an attorney's fees and costs award are met in this case, and otherwise defers to my discretion the calculation of a proper amount to be awarded. Response at 2, 3.

**ANALYSIS**

**I.     Petitioners' Claim had Reasonable Basis**

Under the Vaccine Act, a special master may award fees and costs to an unsuccessful petitioner if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See,* e.g., *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). In short, the claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)).

This objective inquiry is focused on the *claim*—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. Reasonable basis inquiries are not static— they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation).

The standard for reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed.

Cl. 72, 77 (2019). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (2017).

I determined in my entitlement decision that Petitioners had not established by preponderant evidence that the flu vaccine caused I.R.M.'s tragic death or could have done so. However, their claim had sufficient objective basis to justify a fees and costs award. There was no dispute about the fact of vaccination or general circumstances of I.R.M.'s death, which occurred close enough in time to the vaccine's administration to raise reasonable questions about a possible association. The experts also agreed in critical respects on certain matters relevant to my disposition of the claim, further bulwarking the objective reasonableness of Petitioners' position. And although I was not ultimately persuaded by Petitioners' causation theory, it was supported by credible science and contained many reliable sub-components. Respondent for his part does not otherwise contest reasonable basis. Accordingly, a final award of fees and costs in this matter is appropriate.

**II.   Calculation of Attorney Fees**

Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioners requests the following rates based on the years work was performed:

|  | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|---|
| **Richard Gage, Esq.** | - | $300/hour | $311/hour | $318/hour | $326/hour | $338/hour | $350/hour |
| **Kristen Blume, Esq.** | - | - | - | $251/hour | - | $338/hour | $350/hour |
| **Valerie Borek, Esq.** | $275/hour | $275/hour | $275/hour | | | | |
| **Paralegals** | - | - | $120/hour | $120/hour | $120/hour | $120/hour | $120/hour |

The rates requested for Mr. Gage, Ms. Blume, and their firm's paralegal work are consistent with what he has previously been awarded, and I find no cause to modify them in this instance. *Kreizenbeck v. Sec. of Health & Human Servs.*, No. 08-209V, 2020 WL 5909091 at *3 (Fed. Cl. Spec. Mstr. Sept. 15, 2020) (awarding Ms. Blume a rate of $251/hour for 2017, $338/hour for 2019, and $350/hour for 2020, and awarding Mr. Gage a rate of $300/hour for 2015, $311/hour for 2016, $318/hour for 2017, $326/hour for 2018, $338/hour for 2019, and $350/hour for 2020). The hourly rates requested are also consistent with the Office of Special Masters' fee schedule.[3] I find these rates reasonable and award them accordingly.

---

[3] The 2015–2016 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf.

The 2017 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.

The 2018 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202018.pdf.

The 2019 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202019.pdf.

The 2020 Fee Schedule can be accessed at: https://www.uscfc.uscourts.gov/sites/default/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202020.PPI_OL.pdf

Petitioner also requests attorney's fees for prior counsel, Valerie Borek, for work performed in 2014, 2015, and 2016—all at the same rate of $275/hour. Fees App. at 101-14. I have previously approved this rate for Ms. Borek, and I approve it in this case as well. *See Somelofski v. Sec. of Health & Human Servs.*, No. 14-169V, 2016 WL 6803781 (Fed. Cl. Spec. Mstr. Sept. 28, 2016).

All time billed to this matter, moreover, was reasonably incurred. As a result, no reductions shall be made for attorney's fees requested.

### III.   Calculation of Costs

Petitioner also requests an award of $100,864.57 for costs incurred, including expert fees for three experts: Dr. Douglas Miller, Dr. Marcel Kinsbourne, and Dr. Alan Levin. Fees App. at 56-89. Because each expert presents slightly different circumstances, I will address them individually.

#### A.   *Dr. Miller*

Dr. Miller billed most of his time at the general rate of $500 per hour for a total of 36.5 hours (invoice total of $14,050), which was mostly devoted to preparation of an expert report and testimony at the trial. Fees App. at 84-85. This rate has previously been approved in the Program for his work. *See,* e.g., *Allen v. Sec. of Health & Human Servs.*, No. 11-051V, 2013 WL 5229796, at *1 (Fed. Cl. Spec. Mstr. Aug. 23, 2013). In addition, I found Dr. Miller to be a highly competent and helpful expert. I deem $500/hour a reasonable rate for his efforts, as well as the time billed at his reduced rate of $300/hour for travel time.

There are, however, two points that need adjustment. First, Dr. Miller asks for the higher rate of $600 per hour for time specifically devoted to pre-trial preparation or his actual hearing time (i.e. time spent literally testifying or present in the courtroom). Fees. App. at 84. But special masters have consistently held that it is inappropriate for medical experts to receive a higher fee for trial testimony. *Warfle v. Sec. of Health & Human Servs.*, No. 05-1399V, 2012 WL 4845635 at *41 (Fed. Cl. Spec. Mstr. Sept. 21, 2012); *Gardner-Cook v. Sec. of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520 at *4 (Fed. Cl. Spec. Mstr. June 30, 2005); *Salimian v. Sec. of Health & Human Servs.*, No. 91-1140V, 1992 WL 185710 at *3 (Fed. Cl. Spec. Mstr. July 17, 1992); *Gonzalez v. Sec. of Health & Human Servs.*, No. 91-905V, 1992 WL 92200 at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 1992).

---

The hourly rates contained within the schedules are updated from the decision in *McCulloch v. Sec'y of Health & Human Servs.*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioners' fee request provides no basis for the increased trial-related rate, nor does it distinguish any of the aforementioned cases. As a result, I will only compensate Dr. Miller at a single, $500 rate for all work performed on this case, without regard to the specific nature of the work. This results in a reduction of $1,350 ($100 less for each of the 13.5 hours devoted to pretrial and hearing-specific work).

Second, Dr. Miller's invoice filed in this fees application appears to contain a mathematical error, in which the total amount requested is $1,500 less than the total hours billed, based on my own calculation. Fees App. at 84-85. Therefore, Dr. Miller's costs will be increased by $1,500 to account for the mathematical mistake in his invoice. In sum, Petitioners are entitled to $14,200 for Dr. Miller's work—a slight increase from the $14,050 requested, even after my reductions are calculated.

### B. *Dr. Kinsbourne and Dr. Levin*

Drs. Kinsbourne and Levin both request $500 per hour for their work in the case. The rate itself is consistent with what they have recently been awarded, and I therefore will not make adjustments to them. *See e.g.*, *Palattao v. Sec. of Health & Human Servs.*, No. 13-591V, 2019 WL 6119418 at *5 (Fed. Cl. Spec. Mstr. Sept. 20, 2019).

However, both of these experts performed significantly more work on the matter than Dr. Miller. Dr. Kinsbourne devoted 103.25 hours to the case, while Dr. Levin put in 42.5 hours of work. I find such time excessive—especially given the unhelpful nature of the opinions and testimony offered. *Martin v. Sec. of Health & Human Servs.*, No. 15-789, 2020 WL 4197748, at *31 (Fed. Cl. Spec. Mstr. May 8, 2020), *mot. for review den'd,* slip op. (Fed. Cl. Aug. 20, 2020). This was especially so for Dr. Levin, whose opinion exceeded his immediate competence, and/or offered patently unreliable contentions that lacked firm scientific or medical grounding sufficient to be deemed credible. *Id*.

I am generally reluctant to deny compensation to experts who have attempted to assist a petitioner with his claim, no matter my assessment of the expert's overall quality. Here, Dr. Levin's time was somewhat more reasonably spent—but resulted in the worst opinion offered in this case. Dr. Kinsbourne, by contrast, simply spent too much time on the matter to reasonably reimburse all of his work, since the opinion he offered was far less integral to Petitioners' theory than Dr. Miller's. In either case, some reduction is warranted.

For purposes of consistency, and to avoid too much of a penalty, I will cut both expert's requested compensation by the same 15 percent amount.[4] I am empowered to make these kinds of reductions. *Saxton v. Secretary of Health & Human Servs.*, 3 F.3d 1517, 1521 (noting that it is "well within the special master's discretion to reduce the hours to a number that, in his experience and judgment, was reasonable for the work done"). Both experts (and the counsel who retain them) are warned in the future to take care that the time they devote to a matter is reasonably consistent with the value and quality of the report and testimony that is produced in the end. This reduction results in a total cut of $7,349.50 from Petitioners' requested costs for these two experts.

C.   *Other Costs*

Petitioners also ask for reimbursement of costs associated with filing fees, record retrieval costs, shipping costs, and travel-related expenses incurred due to the trial of this matter in Washington, D.C. Fees App. at 56-89. Such costs are typical in Program cases, Respondent does not otherwise object to their reasonableness, and I therefore award them as requested.

**CONCLUSION**

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of a final fees award, and based on the foregoing, I **GRANT IN PART** Petitioners' Motion for Attorney's Fees and Costs. I therefore award a total of $202,731.21, reflecting $109,066.71 in attorney's fees and $93,664.50 in costs, in the form of a check payable to Petitioners and Petitioners' counsel, Mr. Richard Gage, Esq.

A breakdown of the total costs awarded (since those are the only part of the award that is reduced from Petitioners' request) is as follows:

| Costs | Requested | Awarded |
| --- | --- | --- |
| **Dr. Miller Fees and Costs** | $14,050.00 | $14,200.00 |
| **Dr. Levin Fees and Costs** | $20,750.00 | $18,312.50 |
| **Dr. Kinsbourne Fees and Costs** | $48,684.00 | $43,772.00 |
| **Other Costs** | $17,380.57 | $17,380.57 |

---

[4] In a further attempt at fairness, I will only apply this across-the-board reduction to non-travel and non-hearing time. Dr. Levin billed a total of 42.5 hours, which were made up of 2 hours of travel time (billed at $250/hour), 8 hours of time spent at the entitlement hearing, and 32.5 hours spent in preparation. Only the hours spent in preparation are subject to the fifteen percent reduction. Dr. Levin's total bill is therefore reduced from $20,750.00 to $18,312.50. Similarly, Dr. Kinsbourne billed a total of 103.25 hours, which were made up of 10.25 hours of travel time (billed at $250/hour), 12.5 hours spent at hearing, and 80.5 hours spent in preparation. After reducing the hours spent in preparation by fifteen percent, Dr. Kinsbourne's total bill is therefore reduced from $48,684.00 to $43,772.00.

| Total | $100,864.57 | $93,664.50 |
|---|---|---|

In the absence of a timely-filed motion for review (see Appendix B to the Rules of the Court), the Clerk shall enter judgment in accord with this decision.[5]

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[5] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.